Filed 4/8/16  In re Wilson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re MICHAEL WILSON,<br><br>     on Habeas Corpus. | A146974<br><br>(Contra Costa County<br>Super. Ct. No. 51425214) |

Petitioner Michael Wilson (Wilson) challenges an ex parte order issued by the Contra Costa Superior Court in a divorce case, which is now the basis for several misdemeanor contempt proceedings.  The order imposes numerous constraints on Wilson's conduct in court and in the courthouse, including prohibiting him from harassing and threatening court personnel.  Although Wilson could have sought modification of the order, he raised no objection to it for nine months, until faced with the multiple contempt charges.  At that point, he filed a petition for writ of habeas corpus in the superior court, claiming the order was invalid and therefore the criminal charges had to be dismissed.

The superior court denied Wilson's habeas petition on numerous grounds, including that the order was a valid exercise of the court's authority to ensure safety and decorum in the courthouse and provided sufficient due process protections of which Wilson had not availed himself.  Wilson then filed a habeas petition in this court, which we summarily denied.  He then filed a third habeas petition in the Supreme Court, which issued an order to show cause (OSC) and returned the new habeas proceeding to this court.

1

We now grant Wilson's petition.  We do so solely on the ground the limited record before us does not show a necessity for the superior court to have issued the order on an ex parte basis, without notice to Wilson and an opportunity to respond.  We therefore need not, and do not, address the substantive provisions of the order.  We also do not intend by this disposition to suggest the superior court cannot, on a fully developed record and after providing Wilson with notice and an opportunity to respond, issue any orders reasonably necessary to maintain order and decorum in the court and to protect those using or working in the courthouse from harassing or threatening conduct.

BACKGROUND

Wilson is involved in an apparently contentious divorce proceeding (*In re Marriage of Wilson*, case Nos. D13-05801 & D13-05051).  He is representing himself, and has frequented the courthouse many times.

On February 10, 2014, the Contra Costa Sheriff's Office, which provides security services to the superior court, presented Presiding Judge Barry Goode with an ex parte request for an order imposing restrictions on Wilson's conduct in court and in the courthouse, including prohibiting him from threatening and harassing court personnel. We have no record as to what was actually presented to Judge Goode in support of the ex parte application.

The order states:  "The Court Executive Officer, the chair of the Security Committee and the Presiding Judge have received several reports regarding the conduct of Mr. Michael G. Wilson, including reports of:  [¶] (1) Conduct intimidating to staff, litigants and members of the public; [¶] (2) Recording and intent to record court proceedings and conversations with staff (without their advance permission or knowledge) in violation of the Rules of Court and the Penal Code; [¶] (3) Making inappropriate demands on security staff at the Courthouse; and [¶] (4) Being arrested for similar conduct at the County Jail.  [¶] This conduct has occurred in at least January and February 2014 and has occurred at both the Courthouse and the nearby jail facility. There have been several reports that Mr. Wilson has occupied excessive amounts of court staff time with persistent, argumentative. and intimidating behavior.  Court staff has

2

reported becoming fearful and being distracted from their work.  [¶] Additionally it has been reported that Mr. Wilson's conduct with Court security personnel is so distracting that it is difficult to maintain security screening on other people trying to enter the Courthouse.  [¶] Thus the court staff's ability to conduct business in a prompt, safe and efficient manner effecting the efficient administration of justice, and the ability of members of the public and other litigants to conduct their business has been compromised by the conduct of Mr. Michael G. Wilson.  [¶] This Court has also received reports that Mr. Michael G. Wilson's conduct in the Family Law Court in Florida and in Alameda County Superior Court in California has resulted in Court orders restricting his access to those courts based on similar behavior."  From this recitation, it appears the reports provided to Judge Goode were mostly, if not entirely, hearsay.

Wilson did not receive notice of this ex parte application, and the court did not hold a hearing.

The order enumerates a number of things Wilson is prohibited from doing in court and in the courthouse.[1]  It also provides Wilson can seek modification of its provisions on

---

[1] The order provides in this regard:

"1.  Michael G. Wilson shall not be allowed to bring any recording device into a Courthouse in Contra Costa County without first obtaining written permission from a Superior Court Judge of this Court.  This includes, but is not limited to, cellular telephones and other electronic devices which are capable of recording sound.

"2.  Michael G. Wilson shall not enter a courthouse unless (i) he has a court matter on calendar for the day he presents himself or (ii) he wishes to file a document with the Court.  If he has a valid reason for entering a Courthouse he shall comport himself properly and not behave in a manner that is unruly, disruptive, threatening, aggressive, or that intimidates or threatens to intimidate any staff member or member of the public.

"3.  Mr. Michael G. Wilson may obtain copies of appropriate court files when needed by submitting a written request to staff with prepayment for the copies, which copies will be mailed to his address of record.

"4.  This order does not deprive any security personnel of their rights and duties to maintain security in the Courthouse.  Nor does it limit the power of a Judge or a bailiff to maintain proper control of proceedings in their courtroom.

"5.  Any conduct by Mr. Michael G. Wilson that is unruly, disruptive, aggressive, intimidating or done in a threatening manner toward court staff, court security personnel, or members of the public in the Courthouse may subject him to being removed form [*sic*]

3

a properly noticed motion.[2]  However, he made no objection to the order for nine months, at which point he filed the first of his habeas petitions.[3]

On the same day Judge Goode issued the order restricting Wilson's conduct, a different judge, Judge Larry Gaddis, heard an application by Wilson for a civil harassment restraining order against Contra Costa Deputy Sheriff Derek Murdock (who Wilson alleges in his habeas petition was part of the court's security force).  Wilson maintained Murdock harassed and intimidated him (and in his habeas petition, Wilson devotes 17 pages to outlining his complaints against the officer).  Judge Gaddis found, however, that Murdock was acting within the scope of his court security duties and denied Wilson's request for a restraining order.

Immediately after Judge Gaddis ruled, Sergeant Jason Watkins, the superior court security supervisor that day, served Wilson with the order signed by Judge Goode.  Because the order, among other things, prohibits Wilson from being in the courthouse unless on official business, Evans told Wilson that since his matter before Judge Gaddis was concluded, he was required to leave the building and if he failed to do so, he was "subject to arrest per that order."  Although expressing a desire to remain, Wilson left without incident.

A little over a month later, on April 16, the Contra Costa District Attorney filed a misdemeanor complaint (case No. 168647-6) alleging that on March 11, Wilson

the Courthouse and to having this order being reconsidered to determine if more restrictive measures are needed.

"6.  Nothing in this order shall interfere with Mr. Michael G. Wilson's right to access the Courthouse, but shall ensure that he comports himself in a manner that is consistent with the standards of courthouse behavior required of all members of the public."

[2]  The order states: "If Mr. Wilson wishes to seek to modify the terms of this order, he may file a properly noticed motion which shall be set for hearing before the Presiding Judge."

[3]  Although Wilson made no challenge to the order, Judge Goode amended it on April 22, to allow him to use assistive electronic devices.  The amended order was filed under seal and remains so.  The original order and amended order are collectively referred to as "the order."

4

committed contempt by willfully disobeying a lawful order of the court (Pen. Code, § 166, subd. (a)(4)), the order Judge Goode had issued. At some point, the district attorney filed a second misdemeanor complaint (case No. 170908-8) and, on November 21, filed a first amended complaint in that case alleging two more counts of misdemeanor contempt allegedly committed on May 19 and June 19.

On November 24, the public defender representing Wilson in the misdemeanor cases filed a petition for writ of habeas corpus in the superior court (case No. 05-142521-4) seeking an order (1) requiring the Sheriff to release Wilson from the actual and constructive custody of Judge Goode's order, (2) dissolving Judge Goode's order as unconstitutional, and (3) staying the criminal cases until the validity of Judge Goode's order is determined.

Four months later, on March 23, 2015, Judge Laurel Brady stayed the misdemeanor cases and issued an OSC requiring the superior court (as respondent) and the People and Sheriff's Office (as real parties in interest) to show cause why "petitioner is not entitled to the relief he prays for."

The superior court filed its return on April 22, asserting: (1) Habeas corpus relief is not available because the order does not place Wilson under actual or constructive custody; (2) Wilson's due process rights have not been violated because no hearing is required before a court can take action to protect the security of the court and the order expressly allowed Wilson to challenge any of its provisions; (3) the order is within the court's broad authority to maintain security and is not unconstitutionally vague.

The Sheriff filed a joinder in the return, along with a two-page declaration by Lieutenant Steve Evans in support of the order. Lieutenant Evans provided no information as to the record that was before Judge Goode when the order was issued. Rather he generally stated the Sheriff had had "numerous problems" with Wilson, some of which had precipitated the misdemeanor proceedings—e.g., "having to defend against a baseless Civil Harassment Restraining Order," disrupting courtroom proceedings by calling 911, "recording court proceedings and staff," and "trespassing and causing a

5

disturbance in the lobby of the" jail facility. He also stated Wilson was "demeaning and demanding to courthouse clerical staff," seriously upsetting one clerk.

Three months later, Judge Brady issued a written decision denying Wilson's habeas petition on four separate grounds. First, the original and amended orders did not place Wilson under actual or constructive custody; rather they "merely place certain restrictions on petitioner's actions within the courthouse as he pursues a civil matter." "Admittedly," the court noted, "petitioner may lose his 'liberty' by violating the court's orders . . . but this loss is not compelled by the circumstances of the underlying actions, which are divorce proceedings." Second, Wilson did not "avail himself of the remedy provided in the [orders], namely a noticed motion before the Presiding Judge," but rather "waited seven months before filing his habeas petition." Third, since Wilson did not avail himself of the procedural vehicle provided to him to challenge the orders his due process claims lacked merit. Fourth, the substance of the challenged orders was proper given the court's inherent power to maintain courtroom security and its power under Code of Civil Procedure section 128 to control courtroom proceedings.

Wilson then filed a petition for habeas corpus in this court (No. A145904) seeking an immediate stay of the superior court misdemeanor proceedings and an order dismissing the proceedings on the ground Judge Goode's order is invalid. We denied the request for a stay and summarily denied the petition.

Wilson filed a third habeas case in the Supreme Court (case No. S229852). The court issued a stay of the superior court misdemeanor proceedings and requested informal opposition. Thereafter, the Supreme Court issued an OSC requiring the Sheriff's Office to show cause before this court why the relief prayed for should not be granted.

Instead of filing a return to the OSC in this court, the Sheriff submitted a letter stating the "Office of the Sheriff requests this court issue its ruling on the present petition, which involves no disputed facts and is solely an issue of law, and will not be filing a return. [Citation.] The legal issues raised in the present petition were briefed in opposition to Petitioner's prior habeas corpus petition filed in Contra Costa County Superior Court and those briefs are attached as exhibits to Petitioner's present petition."

6

The superior court, in turn, submitted a letter noting the Sheriff's Office had elected not to file a return and stating the "issues presented by the petition directly affect court operations, and it appears that the Sheriff may not be an 'aggrieved party . . . with sufficient interest in the subject matter of the dispute to press its case with vigor.' [Citation]." The superior court directed this court's attention to the return it had filed in the earlier habeas proceeding.

Wilson filed an objection to the Sherriff's request that we consider the return, joinder and items filed in the superior court habeas proceeding. He alternatively asked, if this court was inclined to consider these filings, that we also consider his traverse filed in that proceeding.

## DISCUSSION

Because no return has been filed in *this* habeas proceeding (despite the Supreme Court's issuance of an OSC), "no disputed factual questions exist for resolution" and we must accept Wilson's factual allegations as true. (*In re Serrano* (1995) 10 Cal.4th 447, 455.) And while the Supreme Court's issuance of an OSC returnable in this court does not establish "a prima facie determination that petitioner is entitled to the relief requested," it does signify the court's " '*preliminary determination* that the petitioner has made a prima facie statement of specific facts which, if established, entitle [petitioner] to habeas corpus relief under existing law.' [Citations.]" (*In re Serrano*, *supra*, 10 Cal.4th at pp. 454–455; *People v. Duvall* (1995) 9 Cal.4th 464, 475 [high court will issue OSC if "the court finds the factual allegations, taken as true, establish a prima facie case for relief"].)[4] We take judicial notice on our own motion of the superior court documents submitted by Wilson, the superior court and the Sheriff's Office. (See Evid. Code, § 459.)

We grant the requested habeas relief on the sole ground the minimal record before us does not show the need for immediate issuance of the disputed order without notice to

---

[4] The Supreme Court's OSC excluded Wilson's claim that the order is void for vagueness, signifying the court concluded he failed to demonstrate a prima facie case for relief that claim.

7

Wilson and without a hearing. (See *Zinermon v. Burch* (1990) 494 U.S. 113, 127–128 [while post-deprivation hearing may satisfy due process, high court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property"]; *Randone v. Appellate Dept. of Superior Court* (1971) 5 Cal.3d 536, 541 ["individual must be afforded notice and an opportunity for a hearing before he is deprived of any significant property interest, and . . . exceptions to this principle can only be justified in 'extraordinary circumstances' "].)

Neither *People v. Ayala* (2000) 23 Cal.4th 225 (*Ayala*) nor *People v. Hayes* (1999) 21 Cal.4th 1211 (*Hayes*), on which respondent court relies, support issuance of the ex parte order in this family law matter without notice and an opportunity to respond. Both *Hayes* and *Ayala* were appeals from first degree murder convictions in which the defendants complained about enhanced courtroom security measures that applied to the courtroom overall and the public in attendance.

In *Hayes*, the defendant objected to "use of a hand-held metal detecting wand, patdown of outer clothing, examination of bags and purses for weapons, locking the courtroom door, and positioning an extra deputy in the courtroom with two additional deputies outside the courtroom," instituted due to concerns the defendant might escape and for the security of witnesses who had allegedly been threatened. (*Hayes, supra,* 21 Cal.4th at p. 1267 & fn. 16.) The Supreme Court rejected his claim that he was entitled to a hearing prior to the institution of these security measures. "Neither due process nor any other constitutional right of a criminal defendant mandates a hearing on the necessity for courtroom or courthouse security." (*Id.* at p. 1268.) The use "of security personnel, even in a courtroom, is not so inherently prejudicial that it must be justified by a state interest specific to the trial." (*Ibid.*) Rather, "whether challenged security measures are so inherently prejudicial as to deny the defendant the constitutional right to a fair trial" must be assessed on a "case-by-case" basis. (*Id.* at p. 1269.) The high court concluded the trial court had not abused its discretion in instituting the additional security measures. (*Ibid.*)

8

In *Ayala*, the defendant objected to placing a metal detector at the entrance to the courtroom. (*Ayala*, *supra*, 23 Cal.4th at p. 250.) The prosecution made a motion for the additional security, the defendant filed opposition, and the trial court heard argument, but did not allow witnesses. (*Id.* at p. 251.) Relying on the "shackling" cases, the defendant claimed a number of his constitutional rights had been violated. (*Id.* at p. 252.) As to his procedural due process claim, the court observed due process is " ' " 'flexible' " ' " and " ' " 'calls for procedural protections as the particular situation demands.' " ' " (*Id.* at p. 253, quoting *People v. Tilbury* (1991) 54 Cal.3d 56, 68–69.) The court then pointed out the metal detector was "a neutral measure that did not focus attention on" the defendant and a contested evidentiary hearing "would not have been useful" and imposed a needless burden on the trial court which "enjoys wide discretion to maintain courtroom security." (*Ayala*, at p. 253.)

Here the trail court's order did significantly more than institute general courtroom security measures that did "not focus on" Wilson. Rather, the order is specifically directed at Wilson and prohibits him, among other things, from entering a Contra Costa courthouse "unless (i) he has a court matter on calendar for the day he presents himself or (ii) he wishes to file a document with the Court." This targeted prohibition is significantly different in kind and character than the general courtroom security measures at issue in *Hayes* and *Ayala*.

We fully appreciate the frustration of the superior court and the Sheriff's Office with Wilson's apparently belligerent and obstructive behavior. However, given the scarcity of the record, we have nothing from which to conclude Wilson presented an *immediate* threat to the public or court personnel, warranting an ex parte order imposing substantial constraints on his conduct without notice and an opportunity to respond. We do not know what, in fact, was actually before Judge Goode in support of the ex parte application. And while it appears the 2011 order issued by the Alameda Superior Court and the 2009 order issued by the Florida state court may have been shown to the judge, they do not provide a record of what Wilson did in this case or show that immediate action was required here to ensure the safety of the public and court personnel.

9

Given our conclusion that the order is invalid on procedural due process grounds, we need not, and do not, address the validity of the restrictions imposed by Judge Goode's order. Nor is our grant of relief on procedural grounds to be understood in any way as a limitation on the superior court's authority to take reasonable actions to maintain order and decorum in the court and to protect the public and employees in the courthouse.

## DISPOSITION

The superior court 's orders of February 10, 2014, and April 22, 2014, entered in case Nos. D-13-05801 and D13-05051 are hereby vacated and the misdemeanor criminal charges against Wilson in case Nos. 168647-6 and 170908-8, as well as any other pending misdemeanor charges based on the vacated orders, are hereby dismissed.

10

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

11